10273

BROWN v. OWINGS.

(101 S. E. 38.)

1. CORPORATIONS—CONTRACT TO FORM; DAMAGES FOR BREACH.—In an action for actual and punitive damages for an alleged fraudulent breach of contract, whereby defendant was to form corporation for manufacture and sale of ice cream, in which plaintiff was to receive a certain amount of stock for a cash payment, and devote his time to the business, and it appeared that the corporation was never formed nor stock issued, and that the business was a failure, it was error to allow recovery of any more than the amount paid by plaintiff with interest; there being no evidence of fraud.

2. CORPORATIONS—BREACH OF CONTRACT TO FORM; EVIDENCE.—In action for fraudulent breach of contract to form corporation and issue stock to plaintiff therein,. whereby plaintiff was to take charge of business for manufacture of ice cream and devote his time thereto, it was error to admit evidence as to actual damages, plaintiff's expense in moving and loss of time; there being no evidence to prove fraud.

Before WHALEY, County ·Judge, Richland, July term, 1918.   Reversed nisi.

Action by John H. Brown against O. Y. Owings.   Judgment for plaintiff, and defendant appeals.

The following is the complaint:

1. That both parties to this action reside in Columbia, said State and county.

2. That in February, 1917, the plaintiff was residing at Mountain Rest, in the extreme northwestern part of this State, when the defendant got into communication with him, and proposed to get him to come to Columbia to engage in business with said defendant, and after various negotiations the defendant induced the plaintiff to enter into the following contract with him, to wit:

Agreement of Incorporation Owings & Brown.—This is to certify that Dr. O. Y. Owings and John H. Brown agree to incorporate Owings Laboratory Company, as follows:

1. The incorporation will be for five thousand dollars, shares $10 value each.

2. Dr. Owings agrees to sell to John H. Brown one thousand dollars worth of stock and more as he may want as follows: He, John H. Davis (Brown), is to purchase five hundred dollars worth, paying cash for same—the remaining five hundred to be held for him until such time as he is in position to pay for it, at no additional cost or interest.

3. No rents for storehouse or lights shall be charged for during the year 1917, after that at nominal rent.

4. Dr. Owings agrees to allow 25% of the net income of the business go to Mr. Brown as his drawing account from time to time, and if for any reason this is not sufficient to give him a reasonable support, then one-third is to be allowed.

5. Dr. Owings agrees to put his best effort into the business and agrees to bond himself for the protection to Mr. Brown and the business against any intemperate or moral degeneracy—and for integrity of character, square dealing and open, frank business relations.

1. John H. Brown agrees to purchase for cash five hundred dollars for stock to be delivered as soon as legalized and five hundred later at such time as will be convenient for him.

2. John H. Brown also agrees to bond himself against any intemperance or moral degeneracy and for integrity of character and square dealing and open and frank business relations.

3. He, J. H. Brown, agrees that he will give his undivided efforts to the business in any and every branch of it wherever needed.

4. All formula and trade names which are the property of Dr. Owings are to be used by Owings Laboratory Company free of any royalty.

Witness our hands and seal, this February 26, 1917. O. Y. Owings, J. H. Brown. Witness for O. Y. Owings' signature: O. Y. Owings, Jr. Witness as to J. H. Brown: A. L. Brown.

3. That at and before the signing and sealing of said instrument, and as one of the considerations and inducements therefor, said defendant represented and agreed that he would incorporate said business at once, and turn over to this plaintiff five hundred dollars worth of stock therein, and this plaintiff intrusted to said defendant the said five hundred dollars for the purpose of putting it into the capital stock of said corporation.

4. That instead of forming said corporation, as he had agreed to do, the said defendant violated his said agreement, failed and refused to incorporate said business, and accompanied said breach of contract with a fraudulent act, to wit, he appropriated to his own use the said sum of five hundred, which had been intrusted to him for a specific purpose, and has never incorporated said company, as he represented that he would do, but has appropriated to his own uses and purposes the money belonging to this plaintiff.

5. That said defendant represented to this plaintiff that his business was in flourishing condition, and making money, and that as soon as the corporation was formed that he would be able to finance the enterprise, and he assured plaintiff that he would be able to make a good living out of the business.

6. That induced by the representations and promises of the defendant, which the defendant knew were false, the plaintiff intrusted said sum of five hundred dollars to the defendant, who instead of forming said corporation at once, as he had promised and agreed to do, appropriated said money to his own use, has never formed said corporation, neglected and refused to equip said business so that any money could be made out of it, and caused plaintiff to lose his time, to break up his home and move to Columbia, relying upon the promises of the defendant, which he wilfully and wantonly refused and failed to perform, and thereby damaged the plaintiff in the sum of two thousand dollars.

7. That said defendant is justly due the plaintiff the sum of five hundred dollars, with interest from the first day of March, 1917, and the further sum of two thousand dollars, actual and punitive damages for the breach of said contract.

Wherefore, the plaintiff demands judgment against the defendant for the sum of two thousand five hundred dollars, with interest on five hundred dollars from the 1st day of March, 1917, and for the costs and disbursements of this action.

The following is the answer of the defendant:

1. Admits paragraph 1 of the complaint.

2. Admits paragraph two of the complaint, except so much as alleges that the defendant induced the plaintiff to come to Columbia.

3. Denies in substance paragraph 3. Admits that the defendant put five hundred dollars into the joint business

with the intention to get five hundred dollars worth of stock in the proposed corporation worth five thousand dollars.

4. Denies paragraph 4, and alleges that before the proposed corporation of the five thousand-dollar business could be put into effect, and while plaintiff had invested five hundred dollars in the business and defendant had invested five thousand dollars in the business, the plaintiff failed and refused to carry out his part of the agreement, and through this caused the defendant great loss of money and investment and caused the enterprise and proposed business which was to be incorporated to fail and decline in valuation. That by reason of this failure of the plaintiff the business was not incorporated promptly, and when the defendant offered and proposed to incorporate it the plaintiff refused to do so, although the defendant was ready and willing for the enterprise.

5. Denies so much of paragraph 5 as alleges any misrepresentation, and alleges that had plaintiff gone into the enterprise and performed his part of it it would have prospered.

6. Denies paragraph 6, except so much thereof as alleges that no corporation was ever formed, and alleges that the failure to form the corporation was due to the refusal of the plaintiff.

7. Denies paragraph 7 in whole.

8. Further answering the complaint, defendant alleges plaintiff and defendant went into an agreement which when perfected would have resulted in the business being incorporated. That the sole reason and direct cause of the failure to incorporate was all due to the failure and refusal of the plaintiff to perform his duties as set forth in the agreement. That instead of coming to the place of business and rendering the canvassing and general soliciting part of the business as he agreed to, the plaintiff absented himself from the business and refused and failed to perform any work

whatsoever, and on account of this failure the business was caused to decline and thereby causing loss somewhat to the plaintiff and a great loss to the defendant, who had a large amount invested in the enterprise.

6. That plaintiff has taken merchandise from the proposed place of business amounting to the value of one hundred dollars or more. That together with this and the failure of the plaintiff to properly do his work the defendant has lost considerably, and the five hundred dollars advanced by the plaintiff has simply gone into the business to purchase the necessary materials and equipment, and this has been lost as aforesaid in the normal and usual course where a business suffers by reason of lack of attention.

Wherefore, defendant prays that the complaint be dismissed with costs to the plaintiff.

Charge. The Court: Well, Mr. Foreman and gentlemen, it is my duty to give you the law governing the issues raised by the pleadings, and it is for you to apply that law to the facts, whatever they may be.

You heard the plaintiff's claim read to you by his attorney at the beginning, in which he represents, in substance, that he entered into a written contract with the defendant, Dr. Owings, on the 26th of February, 1917, in which Dr. Owings agreed to form a company of five thousand dollars capital stock divided into shares of ten dollars each, and that Dr. Owings agreed to sell him one thousand dollars' worth of stock and more as he might want, and he, J. H. Brown, the plaintiff, was to purchase five hundred dollars' worth, paying cash, and the remaining five hundred dollars was to be held for him until he could pay it at no additional cost or interest.

He further along alleges, among other things, that Dr. Owings agreed to allow him twenty-five per cent. net of the income of the business, to go to him, the plaintiff, for his support, and, if that was not sufficient, to allow him one-third more; that each agreed that each would give the other a bond

to protect the other and the business against any intemperate or moral degeneracy, and for integrity of character, square dealing and open, frank business relations; Dr. Owings was to put in the formula and trade names, which were his property.

Now, the plaintiff alleges that that was the contract in substance and that he was induced to enter into that contract by the defendant, in that the defendant agreed at that time to incorporate the business at once; and that he turned over to the defendant the five hundred dollars; that the corporation was not formed; that he performed his part of the contract—that is, the plaintiff alleges that he performed his part of the contract; that he broke up his home and moved to Columbia; lost time; that in connection with the breach of that contract which he alleges that there was a fraudulent act on the part of the defendant, in that the defendant took that five hundred dollars for one purpose and used it for another, instead of forming the corporation and putting the five hundred dollars in shares of the corporation that he converted it to his own use; and on account of that breach of the contract he, the plaintiff, was damaged in the sum of two thousand dollars, together with the five hundred dollars which he put in or which he turned over to the defendant, and which he says he has not received back.

He, therefore, asks you for twenty-five hundred dollars, with interest on the five hundred dollars from the 1st day of March, 1917.

Now, the defendant comes in and admits the contract as alleged in the complaint; but says that the plaintiff failed to carry out his part of the same, the plaintiff didn't attend to his work as he should have done, and on that account the business went down and became nonsupporting; and also that the plaintiff got about one hundred dollars' worth of merchandise.

Now, the contract in this instance is admitted as set out in paragraph 2 of the complaint.

The answer admits several things here. You will have the answer in the room with you. Those things that the answer admits you need not consider.

The contract as set out here in the complaint, admitted.

In that contract—it being in writing I must construe it for you—Dr. Owings was to form a corporation, its capital stock to be five thousand dollars. Brown was to put in five hundred dollars cash. He was to take five hundred more if he could possibly take it, which stock was to be held for him without any additional interest or expense accruing thereon. Brown was to get twenty-five per cent. of the net income, and if that wasn't sufficient for his support he was to get one-third. Each party was to make that bond that is alleged—that is provided for in the contract and which I have already told you about, the one to the other to protect each other. Brown agreed to purchase the five hundred dollars' worth of stock and it was to be delivered as soon as legalized. And he agreed to give his undivided effort to the business in every branch or whatever needed. And Dr. Owings was to put in all the formulas and trade-marks without any charge. Now, that contract, as alleged in paragraph 3 (2) there, says nothing about when that corporation was to be formed.

But there is another written piece of evidence in here which I must construe, a letter which went along with the contract when Brown was to sign it, as is shown on the face of the letter, and in that letter signed by Dr. Owings he says, "I will at once on receipt of same proceed with the letters of incorporation, using your name as one of the incorporators"—that is, upon receipt of that· agreement signed by Brown and sent back to Dr. Owings with a check for five hundred dollars—that is, that first payment. Now, when Brown received that written contract for him to sign and received this letter, if he accepted that term mentioned in this letter here, namely, that the corporation would be formed at once upon the receipt of that check and signed

agreement by Brown, then, gentlemen, I charge you that
this would then become a part of the contract, there being
nothing mentioned in the contract as to the time of incor-
poration.    That would mean, then, that one of the terms of
that contract would, therefore, be that that corporation
would have to be formed at once upon receipt of those
things by Dr. Owings.    If, on the other hand, when Brown
received this letter he did not construe that phrase in there as
a part of his contract, but considered only that this writ-
ten contract which is set out in paragraph 2 of the com-
plaint was the only contract, with no other terms outside,
then Dr. Owings would have had a reasonable time in which
to form the corporation, because in that contract there was
no time mentioned.    In other words, I leave it to you to say
whether or not when Brown received this letter along with
the contract, when he received that contract did he interpret
that into the contract or not and accept it as one of the
terms of it.    If he did, it is a part of the contract.    If not,
it would not be a part of the contract.    And with that left
out Dr. Owings would have had a reasonable time, and you
would have to say from all the surrounding facts and cir-
cumstances what was a reasonable time.    Otherwise, it
would not be for you, he would have to do it at once upon
receipt of those things.    Now, if that was one of the terms
of the contract and Dr. Owings did not proceed at once or
if that was not one of the terms of the contract, but it was
to be done in a reasonable time under the contract as alleged
and set out in the complaint in paragraph 2, and Dr. Owings
didn't do it in a reasonable time, then in either event, that
contract would have been breached by Dr. Owings and he
would be liable for the natural and proximate results of
that breach, provided you have already believed that the
plaintiff performed his part of the contract; because, Mr.
Foreman, if you and I enter into a contract, you to do cer-
tain things and I to do certain things, and I seek to hold
you for not doing certain things in that contract, then when

I come into Court I have first to show that I have lived up to it—in other words, that I am not at fault before I can ask anything on account of your fault. Whether the plaintiff lived up to his part of the agreement or not, gentlemen, it is for you to say. If he did, then whether or not the defendant breached that contract in any of its terms is for you to say; and if he did, then actual damages would follow.

Now, what are actual damages which the law allows? Those which naturally, directly and ordinarily flow from the result of the breach. In other words, you cannot speculate about it, you cannot conjecture about it, you must feel satisfied, reasonably so, that whatever damages are to be given, if any, are the direct, natural result.

Now, in the breach of a contract the law gives a measure which you can use. It says that it is such damages as would arise in the natural course of events, in the natural course of things from the breach of a contract like that, or such damages as would reasonably be within the contemplation of the parties at the time that they were entering into that contract as the result of a probable breach of that contract in the future. Could they have reasonably thought such and such would flow from the breach of that contract when they were entering into it if it was breached in the future? If so, those things would be included and go to make up the actual damages.

Under the law of this case and the pleadings you could consider expenses, value of time lost, provided they find substantiation in the testimony, and provided you believe that they were the natural and direct and ordinary result of the breach of the contract, if there was any; or that they could have been reasonably in the contemplation of the parties at the time that they were making the contract or something that could reasonably happen later on if that contract were breached, and as a result of that breach. So much, then, gentlemen, for actual damages.

Now, we have alleged in this complaint that the contract was breached and that in connection with the breach there was a fraudulent act on the part of the defendant, in that, as the complaint alleges, he got five hundred dollars for one purpose and used it for another, converted it to his own use. Now, do you find that to exist in the case? It is entirely for you. It is a question of fact. It is within your province, not mine. If Dr. Owings did get five hundred dollars to use for a certain specific purpose as provided for in that written contract, and you believe under the greater weight of evidence, the greater truth of the evidence, that he used it for another purpose, converted it to his own use, then you would have there evidence of a fraudulent act, and upon that you could give what is known as punitive damages, something separate and distinct from actual damages—you have gotten away from actual damages now, you have finished with that part of it—something separate and distinct, to punish the party upon the civil side of the Court for doing that fraudulent act, if you find it was committed.

The measure of punitive damages, the law has no yardstick for it except in the sound conscience, reasonable, fair and impartial judgment of the jurors.

Now, something has been said here, gentlemen, about arrest and bail proceedings. Anything in connection with that it is my duty to clear up. So far the Court knows nothing about any arrest and bail proceedings. There are no records in this Court to show. The jurors are presumed to know the law as well as the Judge. And very often the Judge don't know any law and the jurors, being laymen, probably do know less. Under a late case, Cassel's case,— I think it is in 104 S. C.,—our Supreme Court has said that after a verdict of a jury that in certain cases, under Section 230, I think, it is, where fraud enters, that even though there be no order of arrest before the verdict of the jury, there can be afterwards at the instance of the plaintiff.

That is one reason why I am going to ask you in this case to state in your verdict, if you gave a verdict for the plaintiff and that he is entitled to any damages, that you will state separately actual damages, if you think he is entitled to those, and that you will then state separately your verdict for punitive damages, if you think he is entitled to any punitive damages, because your verdict for actual damages, if you give any, will not be predicated upon fraud at all. There need be no fraud in a breach of contract to entitle a man to actual damages. It is only when one is asking for punitive damages that the element of fraud enters; not merely intent; something else must be shown than a fraudulent intent, there must be a fraudulent act; and when that enters into a case, then punitive damages can be awarded upon that. If you should not find in a case of this character any punitive damages, that would then negative any idea of fraud in the case. So I am going to ask you to state your verdict separately if you find one—two kinds of damages.

At the same time I want to call you gentlemen's attention to this fact: I am under oath to give the law to you impartially as far as is humanly possible; you gentlemen are under oath to ascertain the truth and the facts as near as possible from the witness stand and apply the law to that; you and I are to do that according to our respective oaths, irrespective of where the chips may fall and when; you are to go by the law and the facts and you cannot go by anything else.

Now, is there anything that I have left out for the plaintiff?

Mr. Graydon: No, sir; I don't think so, your Honor.

The Court: Anything for the defendant?

Mr. Alderman: Your Honor, I don't think you referred to the request I practically requested in my argument to the jury—

The Court: I take no notice of those requests to charge dictated to the stenographer or mentioned in argument. Of course, if I have left out something, why, I want you to correct it.

Mr. Alderman: I want you to charge the jury, your Honor, that an oral argreement can be substituted for a written contract by agreement of the parties.

The Court: Gentlemen, I will charge you in connection with that that a written agreement can be substituted for by even an oral contract later on. It would be for the jury to say in a case like this whether there was any such substitution. If there was a substitution later on and a waiver of any rights that the plaintiff may have had under this contract as he alleges it here and as it is in writing and as I have construed it to you, why, then, he would be bound by his later contract.

Mr. Hammond: Your Honor, there is nothing I have to suggest about the charge, but in fairness to all I would like to ask that the Court would consider or the jury would consider that the jury and Mr. Graydon go up there and look at that plant. Mr. Graydon seems to have an idea that the plant is an old worn out plant; there is some testimony to that effect; but we testified that it was an up-to-date working plant; and may be the jury could go up there and determine for itself what it is.

The Court: No, Mr. Hammond, if this was connected with a sale or something in connection with the plant I would let the jury go up there, but this is a suit on a breach of contract.

Mr. Hammond: We just wish them to see it.

The Court: There is something that I usually say, that one who comes into Court complaining of another, that as to those things alleged in his complaint which are denied the burden is on him to prove it by the preponderance of

the evidence or greater weight of the testimony; and by the greater weight of the testimony the law means the greater truth of the testimony.

You will have with' you the summons and complaint. Write your verdict or verdicts, as the case may be, upon the summons and complaint for relief, that one with the big letters on it.

And if you find for the plaintiff actual damages say, We find for the plaintiff so many dollars actual damages, putting in that word "actual," writing out the amount in words, not in figures, even to the fraction of a dollar, if that should occur, and sign your name under it and then put the word "foreman" under your name.

If you should further find punitive damages, then instead of writing your name with the "foreman" under it under the words "actual damages," write separately and distinctly your second verdict, We further find for the plaintiff so many dollars punitive damages, putting in the word "punitive," writing out the amount in words and not in figures, just like in the other.

If you find both kinds, why, you need only write your name under the last of the two and put the word "foreman" under that.

And any exhibits that have been put into—have been introduced here, Mr. Foreman, you carry into the room with you, among them that book. I believe there was a book introduced.

After deliberating on the case, the jury rendered a verdict in favor of the plaintiff for $1,000 actual damages and $1,500 punitive damages, upon which judgment was entered against the defendant.

*Messrs. Cooper & Alderman, Jas. H. Hammond* and *Jas. S. Verner,* for appellant. *Messrs. Cooper & Alderman* submit: *There was no such evidence of a fraudulent inducement to the making of a contract as would warrant the question of fraud in the procurement of a contract being sub-*

*mitted to the jury:* 107 S. C. 200; 101 S. C. 221; 85 S. E.
85; 106 S. C. 200; 90 S. E. 1019; 105 S. C. 72; 108 S. C.
56; 101 S. C. 221; 21 S. C. 353. *As to the measure of
damages:* 70 S. C. 108 (cited and differentiated); 92 S. C.
114; 25 S. C. 68; 88 S. C. 572; 101 S. C. 170.

*Messrs. Graydon & Graydon,* for respondent, cite: *As to
what damages are recoverable:* 65 S. C. 502; 54 S. C. 505.
*As to exceptions not conforming to the rules of this Court:*
Supreme Court Rule 6. *As to the admissibility of parol
testimony to fix the time of the performance of a written
contract, where no time is mentioned in the contract itself:*
72 S. C. 368; 61 S. C. 167; 68 S. C. 533.

August 26, 1919.

The opinion of the Court was delivered by Mr. Justice
Hydrick.

Plaintiff sued to recover actual and punitive damages for
an alleged fraudulent breach of contract, and, under the
rulings and instructions of the trial Court, he recovered
judgment for $1,000 actual and $1,500 punitive damages;
hence this appeal.

The facts are practically undisputed. Defendant was
engaged in the city of Columbia in manufacturing and sell-
ing ice cream to the retail trade, and owned a plant worth
from $2,500 to $3,500. Being engaged in other enterprises
and needing a competent assistant for his ice cream business,
he advertised for one, and got into communication with
plaintiff, who lived in Oconee county. After some corre-
spondence between them, plaintiff came to Columbia, in Feb-
ruary, 1917, and the plant was shown to him by defendant,
and the possibiblities of making the business a success were
discussed between them. Defendant told him that, while
he had actually made very little out of it the year before, he
believed that, with the assistance of a competent man, it
could be made a very profitable business, and painted the

possibilities of success in rather glowing terms, as to what they could do and the profits they could make, but without misrepresenting any past or existing fact, and he impressed upon plaintiff in their correspondence and conversations that the success of the business would depend upon the ability and energy with which it was conducted.

Thereupon they entered into a written contract, the substance of which was that they would form a corporation, under the name of Owings Laboratory Company, with a capital stock of $5,000, in shares of the value of $10 each, and that Owings would sell to plaintiff, $1,000 worth of stock, or more, if wanted, for which plaintiff was to pay $500 cash, and the balance at his convenience, without additional cost or interest; that Owings would put in his formulas and trade names free, and furnish the house in which the business was conducted, without charge for rent or lights during the year 1917, and thereafter at a nominal rent; that plaintiff would devote his entire time and efforts to the business, and was to have one-fourth of the net income, as his "drawing account," and, if that was not sufficient, then, one-third thereof.

Under this agreement, plaintiff gave defendant his check for $500, on March 6, 1917, and moved his family to Columbia, and began work about the last of April. The business proved a failure, and plaintiff got practically nothing out of it, but the money which he paid in was used in the business. The corporation was never organized, and, of course, no stock was ever delivered to plaintiff.

The foregoing are the salient features of the transaction between the parties. There are some details which it is unnecessary to state, as they have no material bearing upon the case or applicable law. There are exceptions to the admission of testimony and to the charge, but the consideration of these becomes academic in the view which we take of the refusal of defendant's motion to direct the verdict

on the issue of fraud.   The testimony does not warrant the
inference that Owings was guilty of fraud, either in induc-
ing plaintiff to enter into the contract and pay his money, or
in failing to organize the corporation, and give plaintiff the
stock which he paid for.   But there is no doubt that he
broke his contract to organize the corporation and deliver
the stock paid for.   He testified, however, that the failure
to organize it was acquiesced in by plaintiff, in the hope
that they could find some one to take plaintiff's place; and it
appears that, in August, they inserted an advertisement in a
newspaper with that end in view, which was dictated by
defendant and written out by plaintiff and carried to the
paper; and that when defendant offered later to organize the
corporation plaintiff refused to join with him.   This was
admitted by plaintiff.

As the business is admittedly a failure, plaintiff's stock
would probably be worth much less than the money he paid
for it with interest thereon, and, as defendant admits his
liability to that extent, and says he is willing to pay
back the money with interest thereon from date of
receipt thereof, the judgment of this Court is that
the judgment of the County Court be reversed, and that the
case be remanded for a new trial, unless plaintiff or his attor-
neys shall, within 20 days after service upon his attorneys
of notice of filing the remittitur herein, remit upon the record
all of the judgment recovered, except the sum of $500, with
interest thereon from March 6, 1917.

Judgment reversed *nisi.*

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS
and GAGE concur.

MR. JUSTICE FRASER disqualified.

On petition for rehearing.

PER CURIAM.   Plaintiff petitions for a rehearing on the
ground that the Court misconceived the issues made by the

pleadings, and decide the case on a different theory from that on which it was brought and tried in the Court below, in that plaintiff sued for actual and punitive damages, on the ground that he intrusted to defendant $500 for the purpose of forming a corporation, and not to pay for stock in a corporation already formed, and that, instead of forming the corporation, defendant fraudulently appropriated the money to his own use; and for actual damages, on the ground that, induced by defendant's promise to form the corporation, he broke up his home and moved to Columbia, the damage so claimed being the expenses of moving, his loss of time, etc.

It is true that we decided the case on a different theory from that stated, not because we misconceived the issues, but because we found that it had been tried upon an erroneous theory of the law applicable to the facts proved. Cases must be decided according to the facts proved, or facts of which there is some evidence, and not upon mere allegations of fact which are denied and unsupported by evidence. If the facts alleged had been proved or if the evidence had been sufficient to warrant a reasonable inference of their truth, our decision might have been in accordance with the theory upon which the case was brought and tried.

Plaintiff sued for damages for breach of the contract, the substance of which was stated in the opinion, and alleged, also, that defendant induced him, by false and fraudulent representations, to make the contract, and that he was guilty of a fraudulent breach thereof, in failing to organize the corporation and deliver the stock paid for, and in appropriating to his own use the money paid him for the stock.

The case was tried upon the theory that there was sufficient evidence to prove the allegations of fraud, and, against defendant's objection, which was reserved by exceptions to this Court, plaintiff was allowed to prove, as actual damages, his expenses in moving to Columbia, his loss of time, etc.; and, on the same theory,

the Court instructed the jury that, if they found the facts alleged to be true, such damages were recoverable, to which instructions exceptions were duly taken.

Now, when we found that the evidence was insufficient to warrant the inference of fraud, either in inducing plaintiff to make the contract, or in defendant's breach thereof, it necessarily followed, as a logical and legal sequence, that the trial Court had erred in admitting the testimony objected to, and in the charge complained of. We thought that was so clear that it was unnecessary to state it. Perhaps, however, we should have stated explicitly the process of reasoning by which we reached the conclusion that it was unnecessary to consider the exceptions to the admission of evidence and the charge, instead of merely saying that, in view of the insufficiency of the evidence to sustain the allegation of fraud, we deemed it unnecessary to consider those exceptions.

The contention that the money paid to defendant for the work was paid in trust is clearly untenable. The transaction was simply a sale and purchase of an interest in defendant's business, which the parties agreed should be capitalized at $5,000 and incorporated, and, when incorporated, the stock paid for by plaintiff was to be delivered to him. The money, therefore, belonged to defendant as so much paid to him for an interest in the business, which was to be represented by the stock to be delivered to him, as soon as the incorporation of the business was perfected. The failure to incorporate was nothing more than a breach of the contract to do so.

While defendant denied that the failure to incorporate was altogether his fault, and insisted that the delay in doing so had been acquiesced in by plaintiff to such an extent as to amount to waiver, that issue was decided against him by the jury. Therefore we said that defendant had breached his contract to incorporate, and was liable for the conse-

quent damages. There was no evidence that plaintiff had suffered any damages from the failure to incorporate, other than the loss of interest on the money paid to defendant, because the evidence is undisputed that the business was a failure, and did not make enough to pay running expenses, to say nothing of dividends on the stock, if it had been incorporated, and there was no evidence tending to prove that the failure to organize the corporation caused or had anything to do with the failure of the business.

Having reached the conclusion that the evidence was not sufficient to sustain the charge of fraud, and, therefore, that the Court erred in admitting the evidence objected to, and in its charge as to the plaintiff's right to recover such damages, a new trial absolute would have been inevitable but for the fact that, during the argument, a member of the Court asked defendant's counsel if defendant would be willing to pay back to plaintiff the money which he had received, with interest, and, his counsel being unable to answer, defendant himself arose and said that he was perfectly willing to so do. In view of that circumstance, and taking the view, most favorable to plaintiff, that he would probably prefer to hold the judgment which he had obtained for the money paid with interest rather than be put to the trouble and expense of a new trial, we framed our judgment so as to give him the option, and not with the intention of reducing the amount of actual damages found for him at all. He still has the option to take a new trial, if he be advised that he can prove that he sustained more damages by the failure to organize the corporation and deliver to him the stock which he paid for than the amount which he paid to defendant with interest thereon.

It will be seen, therefore, that counsel for plaintiff is mistaken in supposing that we undertook to consider the sufficiency of the evidence to prove actual damages, notwithstanding there was no motion to direct a verdict as to such damages, as required by rule 77 of the trial Court, or that

we undertook to reduce the amount found by the jury. Our judgment was based upon the conclusion that the damages which the jury were allowed to find were not recoverable under the law applicable to the case proved.

The petition is, therefore, dismissed.

MR. JUSTICE FRASER disqualified.